UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| HEALTHCARE SERVICES GROUP, LLC, | ) ) ) |
| Plaintiff | ) ) ) CIVIL ACTION |
| vs. | ) ) |
| COLONIAL MANOR HEALTH CARE, LLC, EASTVIEW HEALTH CARE, LLC, MOUNT CARMEL HEALTH CARE, LLC, SAN LUIS HEALTH CARE, LLC, WOODSTOCK HEALTH CARE, LLC, NORTH RIDGE HEALTH CARE, LLC, SHERIDAN MEDICAL, INC., | ) Case No. 18-CV-161 ) ) ) ) ) ) ) ) DEMAND FOR JURY TRIAL |
| Defendants. | ) |

## **PLAINTIFF'S RESPONSE AND OBJECTION TO ALL DEFENDANTS' MOTION FOR LEAVE TO FILE COUNTERCLAIMS**

Plaintiff Healthcare Services Group, Inc. objects to the Defendants' Motion for Leave to File Counterclaims and states as follows.

### Background

1.  This case arises out of the Defendants' refusal to pay for housekeeping and laundry services provided by the Plaintiff to residents of nursing facilities operated by the Defendants. The Plaintiff and parties related to the Defendants (the "Related Entities") are also involved in similar litigation that is pending in Missouri, Ohio, Oklahoma, and New York (collectively, the "Related Litigation").

2.  The Plaintiff filed its complaint in this case on January 30, 2018. Prior to that date, the Plaintiff and the Related Entities engaged in settlement negotiations consisting of occasional communications among counsel as well as a meeting at Plaintiff's offices. (Terwilliger Dec. ¶ 3.)

1

3. The parties submitted a Joint Rule 26(f) Conference Report and Discovery Plan on May 3, 2018. The parties jointly requested that, among other matters, summary judgment motions be filed by December 28, 2018. (Dkt. No. 18.)

4. The Court entered an Order dated May 29, 2018 setting scheduling deadlines. (Dkt. No. 19.) Among those deadlines were:

> a. Parties wishing to file amended pleadings or join parties without leave of court shall do so no by the end of the day on **June 19, 2018**.
>
> b. The parties shall complete all discovery by the end of the day on December 21, 2018.
>
> c. Any party wishing to file dispositive motions shall do so by the end of the day on December 28, 2018. The response and reply deadlines mandated by the local rules shall apply.

5. The final pretrial is scheduled for March 14, 2019 and the trial is scheduled to begin on April 1, 2019. (*Id.*)

6. Based on the parties' stipulation, the Court has extended the discovery deadline until January 25, 2019 and the dispositive motion deadline until February 8, 2019, to allow for depositions to take place in January 2019. (Dkt. No. 26.)

7. The Plaintiff filed a Motion to Compel Discovery and for Sanctions on September 12, 2018. (Dkt. No. 21.) In that motion, the Plaintiff sought an order (1) compelling the Defendants to respond to the Plaintiff's interrogatories and requests for production of documents; (2) prohibiting the Defendants from introducing any documents into evidence that were responsive to the plaintiff's requests for production as a sanction for their failure to respond; (3) ordering the Defendants to pay the Plaintiff $2,557.50 for its fees incurred in bringing the motion, plus an amount to be determined for any reply brief or hearing, and (4) ordering the Defendants to pay the Plaintiff $1,237.50 for its fees incurred in attempting to resolve the discovery issues prior to bringing the motion as a sanction for the Defendants' failure to respond.

2

8. The Defendants never filed a response to the Motion to Compel Discovery and for Sanctions. That motion is still pending and the Plaintiff is still entitled to fees and sanctions. The Defendants did provide the discovery responses that were the subject of the motion to the Plaintiff on September 20, 2018.

9. The Defendants filed their Motion for Leave to File Counterclaims on December 11, 2018. (Dkt. No. 23.)

10. The Plaintiff and certain Related Entities participated in a one-day mandatory mediation session in July 2018 that was scheduled in litigation pending in Missouri. That mediation did not result in a settlement. Other than this mediation, there have been occasional communications among counsel, some of which were required by the courts in the Related Litigation. These communications did not result in a settlement or otherwise narrow the differences among the Plaintiff, Defendants, and Related Entities. (Terwilliger Dec. ¶¶ 4-5.)

11. There have been no other significant settlement communications that would distract the Defendants or otherwise dissuade them from filing counterclaims in this case. Further, given that no agreement has been reached and settlement is not imminent, it cannot be said that the Defendants refrained from filing counterclaims on the belief that they were on the precipice of a global settlement. (Terwilliger Dec. ¶ 6.)

## Argument

Fed. R. Civ. P. 15(a)(2) provides that, outside of 21 days after service, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

Rule 15 allows that leave to amend a pleading should be freely given unless there is reason to deny it:

3

Case 2:18-cv-00161-PP   Filed 01/02/19   Page 3 of 10   Document 27

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of ***any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.*** -- the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court… .

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added).

An unreasonable delay in amending a pleading—and the resulting prejudice to the opposing party—is a reason for a court to exercise its discretion and deny a party the opportunity to amend its pleading. *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (defendants knew of facts at all times and unreasonably delayed in seeking to amend claims); *Kleinhans v. Lisle Sav. Profit Sharing Tr.*, 810 F.2d 618, 625-26 (7th Cir. 1987) (party cannot amend claims 18 months after original pleading and after summary judgment deadline; it was an inexcusably long delay and an apparent attempt to avoid summary judgment on the claims); *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1379-80 (7th Cir. 1990) (late amendment of pleadings was denied because it would have delayed and prejudiced the opposing party and protracted litigation would have placed additional burden on the court).

In particular, a party seeking to file counterclaims may be denied that opportunity if it waits an unreasonable time before filing. *E.g., THK Am., Inc. v. NSK, Ltd.*, 157 F.R.D. 660 (N.D. Ill. 1994). In *THK*, the defendant moved to file substantive counterclaims two years into the case with fact discovery closed and the case close to trial. *Id.* at 664. The court denied the motion:

> The filing of NSK's counterclaim motion at this juncture of the litigation when virtually all of the key facts underlying the antitrust claims ***were known at the time that the patent infringement suit was filed*** suggests that the filing of the motion is for dilatory purposes.
> …
> In any event, to summarize, the factors weighing against the granting of NSK's motion - the likelihood of dismissal of the counterclaims, NSK's unexplained

4

delay in pursuing its claims, the likelihood of prejudice to THK, and the considerable expansion of the scope of the litigation far outweigh the policy favoring free amendment of pleadings.

*Id.* at 666-67.

The closing of discovery and the passing of the summary judgment motion deadline are key factors for considering whether a proposed amendment is prejudicial. *Krumme v. Westpoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998).

## I. The proposed counterclaims are unduly delayed and filed in bad faith and with a dilatory motive.

The Defendants cannot provide any explanation for their delay in attempting to bring their counterclaims. The counterclaims sought to be asserted are for unjust enrichment, breach of oral agreement, negligence, and constructive fraud. All of these claims relate to the services provided by the Plaintiff at facilities operated by the Defendants.

The Defendants have been aware of the operative facts surrounding the counterclaims during the entirety of this litigation. The Defendants knew or should have known of the existence of the counterclaims at the time they filed their answers in this case. This is demonstrated by the affirmative defenses asserted in the Defendants' answers. Among other answers, the Defendants pled "That Plaintiff's claims may be barred, reduced, limited or set off by damage caused to Defendant." (Answer, Dkt. No. 10 p. 8.) The Defendants further asserted the affirmative defenses of unclean hands and estoppel. (*Id.*)

In the current motion, the only justification the Defendants give for seeking to file their counterclaims now is that "The requested counterclaims were not initially filed due to the ongoing settlement discussions between the parties." (Motion ¶ 7.) The Defendants describe "lengthy settlement negotiations, including formal mediation… ." (*Id.* ¶ 3.) This justification falls flat.

5

The Defendants deliberately do not provide specific detail as to the settlement negotiations in this case and the claimed impact of those negotiations on their ability to file counterclaims at an earlier date. That is because the Defendants' use of settlement discussions as an excuse for their dilatory tactics is baseless. The parties (or the Plaintiff and the Related Entities) were engaged in settlement discussions before this case was filed. But since the case was filed in January 2018, the only settlement-related activities have been a one-day mandatory mediation between the Plaintiff and certain Related Entities in Missouri in July 2018, and occasional communications among counsel, some of which were required by courts in the Related Litigation. (Terwilliger Dec. ¶¶ 3-5.) There have been no settlement discussions that would have distracted the Defendants or dissuaded them from filing their counterclaims at any time during the pendency of this case. (*Id.* ¶ 6.) There has never been a global settlement agreement, nor any indication that such an agreement was imminent. (*Id.*)

The reality is that the Defendants seek to file counterclaims at this point to delay this litigation. The counterclaims would widen the scope of the litigation and require the parties to engage in further discovery. The Defendants' proposed counterclaims relate to different time periods than the Plaintiff's claims. The Defendants' claims are related to the time during which the Defendants were still paying for the Plaintiff's services—the Defendants claim that they overpaid. The Plaintiff's existing claims in this case relate to the time during which the Defendants had stopped paying.

The counterclaims would also delay the resolution of this case. The deadline for dispositive motions was set as December 28, 2018. The parties have stipulated that it be extended until February 8, 2019 to accommodate depositions. If the Court were to allow the counterclaims, it would need to further push back the discovery deadline and the dispositive

6

motion deadline, and push back the pretrial and trial dates. This will delay and prejudice the Plaintiff.

The Defendants have shown no justification for failing to seek to assert counterclaims until the eve of the discovery deadline and dispositive motion deadline, and three months before the pretrial. Their actions are dilatory and are intended to delay the case and harm the Plaintiff's prospects of a recovery. For these reasons, the Court should deny the motion.

**II.     The Defendants' motion should be denied because of the high likelihood of dismissal of the counterclaims.**

In addition to denying the motion due to the counterclaims' untimely filing, the Court should deny the Defendants' motion because of the high likelihood of dismissal of the counterclaims. Futility of amendment, or a high likelihood of dismissal of the proposed amended pleading, is a reason for denial of a motion to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *McGee v. Kerr-Hickman Chrysler Plymouth*, 93 F.3d 380, 385 (7th Cir. 1996); *THK Am., Inc. v. NSK, Ltd.*, 157 F.R.D. 660 (N.D. Ill. 1994).

Under Fed. R. Civ. P. 8(a)(2), a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim to relief that is plausible on its face and rises above the speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court need not accept legal conclusions as true, and bare recitation of the elements of a cause of action do not sufficiently state a claim. *Iqbal*, 556 U.S. at 678-79. Legal conclusions couched as factual allegations need not be accepted by the Court. *Id.*

The first counterclaim the Defendants seek to assert is for unjust enrichment (*E.g.* Dkt. No. 23 pp. 6-7.) A claim for unjust enrichment requires "(1) conferral of a benefit[;] (2) with the

7

knowledge of the party benefitted[;] and (3) under circumstances where it is inequitable to permit the party to retain the benefit without payment." *Murillo v. Kohl's Corp.,* 197 F. Supp. 3d 1119, 1132 (E.D. Wis. 2016) (quotation omitted).

The facts alleged by the Defendants would not state a claim for unjust enrichment. There is no allegation of a benefit conferred upon the Plaintiff, nor of the Plaintiff's knowledge of a benefit, nor of inequitable circumstances. Any allegations related to unjust enrichment are nothing more than legal conclusions couched as factual allegations. (*E.g.*, Dkt. No. 23 at p. 6: "Plaintiff charged Colonial unreasonable prices for the services that Plaintiff provided to Colonial at the facility.")

The second counterclaim the Defendants seek to assert is for "breach of oral agreement." (*E.g.* Dkt. No. 23 pp. 8-9.) The Defendants seek to claim that the Plaintiff "charged [Defendants] unreasonable prices for its services and by providing deficient services to [Defendants]." (*Id.* p. 7.) This does not state a claim for breach of contract. The Defendants do not attempt to state a claim to rescind the contract due to its terms being substantively unconscionable. They could not do this in any event for a contract between sophisticated commercial parties. There can be no breach of contract for "unreasonable prices" since those prices were agreed to between the parties. The Defendants do not sufficiently allege any other breach of contract. Their general allegations regarding the alleged breaches—e.g. that the Plaintiff failed to provide proper management, labor, background checks, and materials—do not establish what the Plaintiff's alleged contractual obligations were and how they were breached.

The third counterclaim the Defendants seek to assert is for "negligence." (*E.g.* Dkt. No. 23 pp. 9-10.) This claim is nothing more than a second recitation of the "breach of oral agreement" claim. The Defendants claim that the Plaintiffs failed to fulfill their obligations under the oral agreements. A claim for negligence requires a duty of care, a breach of that duty, a

8

causal connection, and an actual loss. *Zimbauer v. Milwaukee Orthopaedic Grp.*, 920 F. Supp. 959, 964 (E.D. Wis. 1996). The Defendants fail to identify any common-law duty owed by the Plaintiff. They only point to a duty "to perform its obligations under the contract with care, skill, reasonable experience and faithfulness." Absent a fiduciary relationship between the parties, a contract cannot give rise to an extra-contractual duty among the parties. *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011). The "negligence" claim is nothing more than a re-stated claim for breach of contract.

The fourth counterclaim the Defendants seek to assert is for "constructive fraud." (*E.g.* Dkt. No. 23 pp. 10-11.) A claim for intentional misrepresentation (or common-law fraud) requires: "(1) the defendant made a factual representation; (2) which was untrue; (3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; (4) the defendant made the representation with intent to defraud and to induce another to act upon it; and (5) the plaintiff believed the statement to be true and relied on it to his/her detriment." *Kaloti Enters. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 12, 283 Wis. 2d 555, 569, 699 N.W.2d 205, 211. Claims alleging fraud must be pled with particularity by stating "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated… ." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (applying Fed. R. Civ. P. 9(b)).

The Defendants' proposed fraud claim fails to adequately plead fraud. There are no specific allegations of false factual representations with the requisite detail to state a claim for fraud. The "fraud" claim is really another claim for breach of contract, with the Defendants claiming that the Plaintiff overcharged for its services. The Defendants have failed to state a claim for intentional misrepresentation and have failed to plead fraud with particularity.

9

## Conclusion

The Plaintiff requests that the Court deny the Defendants' motion for leave to file counterclaims. The Defendants cannot justify the extreme delay in seeking to assert counterclaims in this case. Their motives are dilatory. Further, the counterclaims have a high likelihood of dismissal. To allow the counterclaims would prejudice the Plaintiff.

Dated: January 2, 2019.

*/s/ Jerome R. Kerkman*
Jerome R. Kerkman
Gregory M. Schrieber

Kerkman & Dunn
Attorneys for the Plaintiff

P.O. Address:

839 N. Jefferson Street, Suite 400
Milwaukee, Wisconsin 53202-3744
Tel: 414.277.8200
Fax: 414.277.0100
Email: jkerkman@kerkmandunn.com